## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 20-CV-20961-WILLIAMS/LOUIS

SILVA HARAPETI,

      Plaintiff,

v.

CBS TELEVISION STATIONS, INC.,
*et al.*,

      Defendants.

_____/

### REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court on Plaintiff Silva Harapeti's ("Harapeti") Corrected Motion for Conditional Certification and Facilitation of Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b) (the "Corrected Motion") (ECF No. 28). This Corrected Motion was referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, by the Honorable Kathleen M. Williams, United States District Judge (ECF No. 34). An evidentiary hearing was held on this Motion on September 24, 2020 and was continued on October 6, 2020. Having reviewed the Corrected Motion and pleadings, considered the arguments and evidence presented at the hearings and being otherwise duly advised on the matter, the Court hereby recommends that the Corrected Motion be **GRANTED, in part**.

### I.      BACKGROUND

This action was originally filed by Harapeti on behalf of herself and other similarly situated individuals against a single Defendant, CBS Television Stations, Inc. ("CBS Television"), for

1

unpaid wages and overtime due to misclassification of employee status under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA"); and for unlawful, retaliatory discharge in violation of the FLSA (ECF No. 1-1).[1] Harapeti worked for CBS Television as a Freelance Television Journalist, covering news stories across South Florida from February 2011 to March 2018 (*id.* at ¶ 14). She alleges that while working as a Freelance Television Journalist, Plaintiff was paid on a per diem basis at a rate of $210.00 per day, regardless of the number of hours she worked (*id.* at ¶ 15). Harapeti alleges that throughout her employment as a freelancer, she worked more than 40 hours a week, but was never paid proper overtime rates in violation of federal and state law. Harapeti also contends that her classification as a freelance employee was incorrect due to the number of hours worked, her qualifications, and the amount of control CBS Television maintained over her work (*id.* at ¶¶ 17, 21, 24).

Plaintiff filed a Motion for Conditional Certification and Facilitation of Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b) (ECF No. 24), which was corrected on July 8, 2020 (ECF No. 28). The Corrected Motion avers that Plaintiff and the other news reporters and producers who worked for CBS Television were subjected to a common practice or policy to pay news reporters and/or producers who appeared on air and/or produced news stories on a per diem basis (*id.* at ¶ 3). Under this policy, Defendant allegedly failed to pay the members of this putative collective action overtime wages (*id.*). As further explained in the Corrected Motion, Plaintiff believes that she and other similarly situated employees performed work that did not exempt them from receiving overtime under the FLSA, as they did not exercise independent discretion or administrative/managerial judgment to perform services for CBS Television (*id.* at ¶ 9). Plaintiff's Corrected Motion seeks conditional certification and authorization for Plaintiff to mail and email

---

[1] Initially filed in state court on January 29, 2020, this matter was removed to the Southern District of Florida on March 2, 2020

notice of this lawsuit to Freelance Television Journalists who performed work for CBS Television, who were subject to CBS Television's per diem payroll scheme, and who were not paid proper overtime compensation within the applicable statute of limitations period (*id.* at ¶ 3). Attached to Plaintiff's Motion was her own declaration (ECF No. 28-1); the proposed Notice Form (ECF No. 28-2); the proposed Consent Form (ECF No. 28-3); and a list of news stations she alleged were owned by CBS Television (ECF No. 28-4). Three additional notices of filing opt-in consent forms by Tiani Jones, Angelica Alvarez Ibarra, and Don Champion – individuals claiming to be similarly situated – were also filed in support of the Corrected Motion, along with their declarations (ECF No. 29; 39; 41). Lastly, Plaintiff filed a "hiring package" exemplar in support of the Corrected Motion (ECF No. 31-1).

Defendant opposes the Motion, which Defendant characterizes as being based on generalized allegations, boilerplate declarations, and a negligible number of dissimilar opt-in plaintiffs (ECF No. 48). Defendant further contends that the majority of the stations identified by Plaintiff are neither owned nor operated by CBS Television or any other entity affiliated with Defendant's parent, ViacomCBS, Inc. ("VCBS") (*id.*). As for those employees that work at one of the 29 stations that do fall under the VCBS corporate umbrella, Defendant has adduced evidence that these stations are operated by CBS Broadcasting, Inc. ("CBS Broadcasting"), not CBS Television.[2]  Defendant challenges Plaintiff's ability to allege even that employees of these 29 local stations, 27 of which are not owned or controlled by Defendant CBS Television, are subject to similar pay practices, and advances in support of its opposition evidence that some of the stations (but not WFOR in Miami) are governed by a patchwork of collective bargaining agreements (*id.*).

---

[2] Evidence was advanced to show that CBS Television owns only two stations: WFOR-TV in Miami, at which Harapeti worked, and KCNC in Denver. The evidence advanced at the hearing further shows that CBS Broadcasting operates these and the other 27 stations, at least to some extent.

Not only are the proposed class' pay practices different, Defendant asserts that Harapeti has failed to show that their job duties are similar. Defendant also attacks Plaintiff's ability to establish that others wish to join the lawsuit, a prerequisite for class certification.  Defendant filed four declarations in support of their opposition, which identify distinct VCBS divisions operating as separate entities, and the unique roles these entities play (ECF Nos. 48-1; 48-2; 48-3; 48-4).

Following her review of the Defendant's declarations, Plaintiff moved for leave to amend her Complaint to add as defendants the corporate entities named in the declarations (ECF No. 59) and she again filed a Corrected Motion for Leave to File an Amended Complaint (ECF No 67) following the evidentiary hearing on the motion for conditional class certification. Plaintiff's Corrected Motion for Leave to File an Amended Complaint was granted, in part, and she was given leave to file an Amended Complaint adding CBS Broadcasting as a Defendant (ECF No. 95).

As an initial matter, Plaintiff's Corrected Motion limits the members of proposed punitive collective action to employees of CBS Television. However, from the claims regarding a nationwide class and policy, it is clear that Plaintiff conflated the role of CBS Television with that of CBS Broadcasting, the entity which operates the 29 local news stations nationwide. Claims of a nationwide class and policy further indicate that Plaintiff intended to seek conditional certification of a class that included employees of CBS Broadcasting, not just CBS Television. While the undersigned has considered Plaintiff's request to grant conditional certification of a class beyond that which is actually requested in the Corrected Motion, the Court ultimately finds that there is no basis to do so. Plaintiff has not shown that there are similarly situated employees who wish to opt-in outside of those employed by CBS Television at WFOR-TV, as explained below.

## II.    DISCUSSION

The FLSA requires covered employers to pay overtime compensation to non-exempt

employees who work more than forty hours in a workweek. 29 U.S.C. § 207(a). Section 216(b) provides employees a right of action against their employers for violations of Section 207. 29 U.S.C. § 216(b). Section 216(b) further provides that employees affected by a defendant-employer's failure to abide by the FLSA's requirements cannot be bound by the decision of an FLSA dispute unless the employees previously consented to being included in the class action. 29 U.S.C. § 216(b). Thus, for a party to bring an FLSA lawsuit on behalf of themselves and others similarly situates, those others similarly situated would need to consent to being included in the action.

Section 216(b) outlines an "opt-in" class-action, which expressly requires a putative plaintiff to "affirmatively opt into [the] action . . . in order to be considered a class member and be bound by the outcome of the action." *Hipp v. Liberty Nat. Life Ins. Co*., 252 F.3d 1208, 1216 (11th Cir. 2001). "Court-authorized notice in a class action context helps to prevent 'misleading communications,' and ensures that the notice is 'timely, accurate, and informative.'" *Sealy v. Keiser School, Inc*., No. 11-61426-CIV, 2011 WL 7641238, at *4 (S.D. Fla. Nov. 8, 2011) (citing *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 171-72 (1989)).

The Eleventh Circuit has suggested a two-part analysis to determine whether a plaintiff is sufficiently situated to other employees in order support an opt-in class action. *See Hipp*, 252 F.3d at 1219; *Morgan v. Family Dollar Stores, Inc*., 551 F.3d 1233, 1260 (11th Cir. 2008). In making a determination at the first stage, known as the notice stage, a court must decide whether, in addition to the current plaintiff, there exist additional employees that (1) are situated with sufficient similarity to require that they be notified of the pending case in order to be given the option to opt-in, and (2) desire to opt-in to the litigation. *Morgan*, 551 F.3d at 1259. To maintain an opt-in class, a plaintiff must demonstrate that all potential opt-in plaintiffs are similar but not necessarily

identical to the putative plaintiff. *See Hipp*, 252 F.3d at 1217; *Kinlock v. Flores*, No. 15-CV-21499, 2016 WL 7507875, at *2 (S.D. Fla. Jan. 6, 2016).

The legal standard to satisfy the similarly situated requirement for the notice stage is "fairly lenient." *Morgan*, 551 F.3d at 1261; *Hipp*, 252 F.3d at 1218. It essentially amounts to conditional certification, which can be analyzed with greater scrutiny once discovery has been taken. *See Morgan*, 551 F.3d at 1261 ("This first step is also referred to as conditional certification since the decision may be reexamined once the case is ready for trial.") (citations omitted). At this notice stage, the plaintiff must make a foundational showing that the proposed class exists; that there are additional employees who are similarly situated with respect to their job requirements and pay provisions; and that these additional employees wish to opt-in. *Kinlock*, 2016 WL 7507875, at *2 (citing *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991)). "The plaintiffs may meet this burden, which is not heavy, by making substantial allegations of class-wide [violations through] detailed allegations supported by affidavits . . . ." *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996). Once the plaintiff satisfies this standard, the action may be conditionally certified, and the putative class can then be given notice and provided an opportunity to opt-in. *Hipp*, 252 F.3d at 1217.

The second stage is "typically precipitated by a motion for 'decertification' by the defendant [and] usually filed after discovery is largely complete and the matter is ready for trial." *Id*. at 1218. Because at this second stage the court has a more extensive and detailed factual record, the standard to show substantial similarity is "less lenient, and the plaintiff bears a heavier burden." *Morgan*, 551 F.3d at 1261 (citations omitted). If the Court determines at the second stage that the original plaintiff and the opt-in plaintiffs are similarly situated, the collective action proceeds to trial on the merits. *Hipp*, 252 F.3d at 1218. If they are not similarly situated, generally the collective

action becomes decertified, the opt-in plaintiffs are dismissed without prejudice, and the original plaintiff proceeds to trial on his or her individual claims. *Id.*

### A.  Whether there are other employees who desire to opt-in

Plaintiff's burden to show the existence of other potential employees who desire to opt-in is not a burdensome one. *Bernard v. ML Auto. Grp.*, LLC, No. 17-24131-CIV, 2018 WL 6531597, at *4 (S.D. Fla. Feb. 7, 2018) (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996). "Courts in this district have held that the existence of merely one other employee who desires to opt-in is sufficient to raise the 'contention beyond one of pure speculation.'" *Bernard*, 2018 WL 6531597, at *4 (*citing  Collado v. J & G Transport, Inc*., No. 14-80467-CIV, 2014 WL 5390569, at *3 (S.D. Fla. Oct. 23, 2014)); *see also, e.g., Wynder v. Applied Card Sys., Inc*., No. 09-80004, 2009 WL 3255585 (S.D. Fla. Oct. 7, 2009) (granting conditional certification of FLSA collective action based on two affidavits: one of the single-named plaintiff and one opt-in plaintiff).

On October 6, 2020, during the evidentiary hearing, Plaintiff testified that several dozen similarly situated employees across the nation would likely opt-in to the litigation if given the opportunity. Such speculative anticipation is insufficient. *See Guerra v. Big Johnson Concrete Plumbing, Inc*., No. 05-14237-CIV, 2006 WL 2290512, at *4 (S.D. Fla. May 17, 2006) ("The mere anticipation that others may want to join the lawsuit or the mere presence of a uniformly adverse compensation policy is insufficient by itself."). However, Plaintiff has presented opt-in consent forms and accompanying declarations of three other employees who are alleged to be similarly situated: Tiani Jones who worked at WFOR-TV in Miami as a Freelance Television Journalist from April of 2016 through July or August of 2017 (ECF No. 29-1); Angelica Alvarez-Ibarra who worked as a Freelance News Reporter for an undisclosed news station in Washington DC from

March through November of 2018 (ECF No. 31-1)[3]; and Don Champion who worked as a Freelance News Reporter at WCBS-TV in New York from May 2013 to April 2015, and later as a CBS Newspath Correspondent from April 2014 through October 2017 (ECF No. 41-1).[4] While Defendant attacks these declarations as being boilerplate, vague and devoid of relevant details (ECF No. 48 at 3), this does not prevent the Court from fining there are others who desire to op-in. *See Bernard*, 2018 WL 6531597, at *4 (finding that the filing of three opt-in consent forms was sufficient to show there were other employees who desire to opt-in, despite defendant's objection that all three affidavits accompanying the consent forms, as well as plaintiffs' own affidavits, contained identical statements).

Defendant also attacks the Declarations of Champion and Alvarez-Ibarra on the basis that they were not employees of CBS Television; they worked for CBS Newspath, which is a separate corporate entity. With respect to Champion, Defendant contends that his relevant employment does not fall within the statutory lookback period. While we address the relevant statute of limitations below, Champion never worked for a CBS Television owned news station and has not work as a per diem employee since 2016 (ECF No. 41-1 at 2).[5] Plaintiff's reply failed to refute or even address this issue and thus the Court agrees that Don Champion's interest in joining this lawsuit should not be considered. *See Bobbitt v. Broadband Interactive, Inc*., No. 8:11-CV-2855-T-24, 2012 WL 1898636, at *4 (M.D. Fla. May 23, 2012) (refusing to consider an opt-in plaintiff's interest in joining this lawsuit where defendant argued he did not perform work for defendant

---

[3] Defendant avers that Alvarez-Ibarra worked for CBS Newspath, a division of CBS News, which is a wholly separate entity from CBS Television and CBS Broadcasting (ECF No. 48 at 8-9).
[4] Pursuant to his testimony at the September 24, 2020 evidentiary hearing, Champion was only paid as a freelance worker at a per diem rate from April 2014 through April of 2016, when he was then hired as a full-time staff corresponded.
[5] Don Champion did work at one of the 29 stations operated by CBS Broadcasting as a per diem employee, but not within the relevant time frame.

"during the relevant three-year period prior to the filing of his notice of consent to join" and plaintiff did not refute this fact). Likewise, Alvarez-Ibarra was never an employee of Defendant CBS Television,[6] and thus cannot be considered as an employee who wishes to opt-in. However, the Court finds that the declaration of Tiani Jones, who did in fact work for CBS Television, is sufficient to show there are other employees of CBS Television at WFOR-TV who desire to opt-in.

### B.  Whether other employees are similarly situated

The FLSA provides that collective actions may be brought by "similarly situated" employees. 29 U.S.C. § 216(b). "However, the FLSA does not define how 'similarly situated' employees need to be to bring a collective action under § 216(b)." *Collado*, 2014 WL 5390569, at *4 (citations omitted). Plaintiff bears the burden of showing a reasonable basis for the claim that other employees are similarly situated. *Bernard*, 2018 WL 6531597, at *4; *see also Morgan*, 551 F.3d at 1261. At a minimum, Plaintiff must establish that these employees are similarly situated with regard to their "job requirements and . . . to their pay provisions." *Dybach*, 942 F.2d at 1568. As such, Plaintiff must provide "detailed allegations supported by affidavits" that all plaintiffs are similar, rather than identical, to the putative class members. *Grayson*, 79 F.3d at 1097; *see also Hipp*, 252 F.3d at 1217.

The factors used to determine whether the putative opt-in plaintiffs are similarly situated include: (1) whether the plaintiffs held the same job title; (2) whether the plaintiffs worked in the same geographical location; (3) whether the alleged violations occurred during the same time period; (4) whether the plaintiffs were subjected to the same policies and practices, and whether these policies and practices were established in the same manner and by the same decision-maker;

---

[6] Nor was Alvarez-Ibarra ever an employee of one of the 29 local news stations operated by CBS Broadcasting.

and (5) the extent to which the actions which constitute the violations claimed by plaintiffs are similar. *Bernard*, 2018 WL 6531597, at *4 (citations omitted); *see also Stone v. First Union Corp.*, 203 F.R.D. 532, 541-43 (S.D. Fla. 2001).

In her Corrected Motion, Plaintiff points to different news stations nationwide at which Freelance Television Journalists were allegedly paid on a per diem basis (ECF Nos. 28 at 5-6; 28-4). It is averred that herself and other Freelance Television Journalist were subject to a common practice of paying a per diem rate and failing to pay overtime wages (ECF No. 28). Plaintiff claims that the primary duties of those working as Freelance Television Journalists is to "factually produce[] reports and/or report[] news events," and that her own primary duty was to act as a Freelance Television Journalist and News Producer (*id*. at 5). It is proffered that in fulfilling these duties, Freelance Television Journalists "were encouraged to work overtime unpaid" (*id*.).

In her declaration, Plaintiff avers that CBS Television has a common nationwide policy of paying news employees and reporters a daily rate (ECF No. 28-1). Pursuant to Harapeti's declaration, she herself was subjected to this common policy while working at WFOR-TV in Miami from 2011 through March 16, 2018, and was paid a flat daily rate regardless of how many hours she worked (*id*. at 2). Harapeti claims that the time keeping system utilized by her employer would not let her enter more than eight hours per day, even if she worked more, and that she was never paid in accordance with the FLSA, which requires that she be paid time and a half for hours worked in excess of 40 hours per week (*id*.). Plaintiff's declaration list numerous other employees who are averred to have been similarly situated, both at WFOR-TV and at other stations (*id*. at 2-3).

While Plaintiff suggests a common practice nationwide, her allegations are premised on the above-described conflation of two separate entities – and employers. The Defendant named in

the Corrected Motion, CBS Television, does not employ anyone outside of Miami's WFOR-TV or Denver. This is not disputed by Plaintiff, who has sought leave to add CBS Broadcasting as a Defendant on the allegation that CBS Broadcasting applies a common practice to WFOR-TV *and* its 28 other stations. However, Plaintiff's Corrected Motion advances no allegations or evidence specific to CBS Broadcasting and thus no basis for the Court to find Plaintiff met her burden of showing that employees outside of Miami or Denver were similarly situated or subject to a common nationwide practice.

Nor, upon the undersigned's independent review of the evidence adduced, does the record evidence support Plaintiff's allegation that CBS—by whatever name[7]—applied a uniform practice to similarly situated employees nationwide. Again, not a single declaration or affidavit from any employee outside of WFOR-TV, who worked for any of VCBS's 28 other local news stations during the relevant timeframe, has been advanced to show employees at these other stations were similarly situated. However, there is enough evidence for the Court to determine that there were similarly situated employees working for CBS Television at WFOR-TV.  In her declaration, Tiani Jones claims to have worked at WFOR-TV in Miami as a Freelance Television Journalist from April of 2016 through July or August of 2017 (ECF No. 29-1 at 1). Jones also claims she worked in a similar role for CBS Newspath during this time (*id.*). Though her job responsibilities at WFOR-TV are not specifically described in her declaration, she claims to have had the exact same job title as Harapeti, and describes her role at Newspath of providing "live shots" and covering stories as being similar to her role at WFOR-TV (ECF no. 29-1 at 1-2). While employed at WFOR-TV, Jones similarly avers that she was paid a daily flat rate regardless of the number of hours she

---

[7] In her Reply to her Corrected Motion for Leave to File an Amended Complaint, Plaintiff explains that she in fact did not know the name of her joint employers, and that herself and other witnesses who testified at the hearings on conditional certification believed that "it's all CBS" and that the various entities under the VCBS corporate umbrella were "all the same" (ECF No. 77 at 1-3).

worked and was never paid in accordance with the FLSA (*id.* at 2). Thus, the undersigned finds Plaintiff has met her burden of showing that there are other similarly situated employees who worked for CBS Television at WFOR-TV in Miami.

Because Plaintiff has demonstrated that there are other similarly situated employees who wish to opt-in, the Court finds that conditional certification is appropriate for a class that includes similarly situated individuals who worked as Freelance Television Journalists or Producers for CBS Television at WFOR-TV in Miami, and who were paid a per diem rate in violation of the FLSA.

### C.  Statute of Limitations

The FLSA provides that actions to enforce its provisions must be commenced within two years "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 61 Stat. 88, 29 U.S.C. § 255(a); *see also McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 129, 108 S. Ct. 1677, 1679, 100 L. Ed. 2d 115 (1988). Plaintiff avers that notice within a three-year statute of limitations period is appropriate in this case based on Defendant's willful conduct. The Court agrees. At the evidentiary hearing, Harapeti gave sworn testimony that the time keeping system used at her place of employment allows per diem employees to only enter eight hours a day (ECF No. 70 at 20:5-12). Moreover, Harapeti testified that she was specifically instructed by her superior to keep recorded hours at eight hours, regardless of how many hours were worked; that entering more than eight hours would throw off the time keeping system; and that any excess hours would not be accounted for (ECF No. 70 at 20:5-12). Tiani Jones gave similar testimony (*id*. at 62:10-24). The undersigned finds this testimony sufficient at this stage to demonstrate WFOR-TV "knew or *showed reckless disregard for the matter of whether* its conduct was prohibited by the FLSA." *McLaughlin*, 486 U.S. at 130 (citing

*Brock v. Richland Shoe Co*., 799 F.2d 80, 83 (1986)) (emphasis in original). Thus, the Court agrees that for purposes of the initial stages of this proceeding, notice should go to all individuals similarly situated to the named Plaintiff who were employed by CBS Television at WFOR-TV during the three-year period preceding the commencement of this action.

Plaintiff further argues that CBS Television must demonstrate that it posted a notice, as required by the FLSA and Federal Law, to inform employees of their federal rights to overtime and minimum wage payments, or else the statute of limitations for Plaintiff's FLSA claims is equitably tolled (ECF No, 28 at 16 n.5). "Equitable tolling is the doctrine under which plaintiffs may sue after the statutory time period has expired if they have been prevented from doing so due to inequitable circumstances." *Ellis v. General Motors Acceptance Corp*., 160 F.3d 703, 706 (11th Cir. 1998). Equitable tolling should be "applied sparingly" by the courts. *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000). Furthermore, such tolling is appropriate only when a plaintiff untimely files his or her complaint because of "extraordinary circumstances that are both beyond his [or her] control and unavoidable even with diligence." *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999). Here, Plaintiff has failed to show any such extraordinary basis. Plaintiff's only justification for such tolling was the posting of notice, or lack thereof. However, CBS Television has put forth evidence that such notice was in fact posted at both WFOR-TV locations through the declaration of Carl Larson, a director at CBS Television (ECF No. 48-2). Thus, the Court finds equitable tolling to be inappropriate in the case at hand.

**D.  Proposed Class Notice**

Pursuant to the above, the Court finds it is proper to provide notice to those similarly situated employees who worked as Freelance Television Journalists or Producers for CBS Television at WFOR-TV in Miami in the three years preceding the filing of this action. As for the

contents of the notice itself, CBS Television raises multiple issues. It is averred that the approved notice should include Defendant's counsel's name and contact information; should further warn potential plaintiffs of the possible costs and liabilities of joining this action in order to facilitate an informed decision as to whether to join the lawsuit; and should inform recipients of their right to obtain independent legal representation (ECF No. 48 at 18). The Court agrees that the form of notice should identify Plaintiff and defense counsel, inform the class members of their right to obtain independent counsel, and advise potential members that they may be required to participate in the discovery process. *See Pares v. Kendall Lakes Auto., LLC*, No. 13-20317-CIV, 2013 WL 3279803, at *10 (S.D. Fla. June 27, 2013); *Dean v. W. Aviation*, LLC, No. 17-CV-62282, 2018 WL 1083497, at *3 (S.D. Fla. Feb. 28, 2018). As such, the Court finds it necessary to include these amendments into their notice. The proposed notice should also reflect the composition of the class as those employees of CBS Television at WFOR-TV as a Freelance Television Journalist or Producer at any time within the three years prior to the filing of this action on January 29, 2020. Consistent with these modifications, the Parties will be required to confer and propose a form of notice and manner of delivery. A separate order shall be entered by the Court regarding the joint filing of this amended notice.

**E. Discovery**

Plaintiff seeks to compel expedited production by Defendant of a complete list of each and every potential class member,[8] along with their last-known home addresses, telephone numbers, e-mail addresses, and social security numbers. Defendant objects to the production of email addresses and social security numbers claiming these requests to be unduly burdensome, overly

---

[8] It bears repeating that pursuant to the above, the potential class members are limited to those similarly situated employees who worked as Freelance Television Journalists or Producers for CBS Television at WFOR-TV in Miami in the three years preceding the filing of this action.

intrusive, and invites improper solicitation of potential plaintiffs (ECF No. 48 at 19). The Court agrees that the production of potential plaintiff's social security numbers is overly intrusive. However, the Court finds Defendant's objections to the production of email addresses to be unsubstantiated and the production of potential plaintiff's email addresses to be appropriate. *See Hubbard v. Jerry's Seamless Guttering, Inc*., No. 19-CIV-81705-RAR, 2020 WL 6038110, at *4 (S.D. Fla. Oct. 6, 2020) (ordering defendants to produce the name, last known mailing address, and email address of potential class members); *Flete v. All Am. Facility Maint. Inc*., No. 19-61536-CIV, 2020 WL 5534270, at *4 (S.D. Fla. July 13, 2020) (same). Thus, it is recommended that Defendant be required to produce the name, last known address, telephone number and email address of all potential plaintiffs within 15 days of an order adopting this Report and Recommendation.

Defendant not only objects to what information should be provided, but who this information should be provided to (ECF No. 48 at 19). Defendant requests that rather than providing information regarding the identity of potential class members to Plaintiff's counsel directly, such information only be provided to a third-party administrator who would be responsible for administering the notice process as a safeguard (*id.*). Plaintiff fails to address this request in her reply brief. Because there is no specific objection to this request on the record, the Court recommends the granting of Defendant's request to utilize a third-party administrator. However, any costs associated with the use of a third-party administrator should be borne by the Defendant.

### D. Notification Process

As addressed above, it is recommended that a third-party administrator will be responsible for administering the notice to all potential class members whose contact information was provided

by the Defendant. It is further recommended that Notification be sent both by U.S. Mail and by email to each potential class member. Plaintiff asks that potential plaintiffs have 60 days from the date the notices are initially mailed to file a Consent to Become Opt-In Plaintiff form (ECF No. 28 at 20).  Defendant does not object to this request and the Court finds it reasonable.

Plaintiff further requests that a follow up notice be sent to all individuals whose names appear on the list produced by the Defendant's counsel but who, by the 14th day prior to the close of the Court-approved notice period, have yet to opt into the instant action. Defendant contends that such follow up notices are improper, and the Court agrees. *See Cooper v. E. Coast Assemblers, Inc*., No. 12-80995-CIV, 2013 WL 308880, at *4 (S.D. Fla. Jan. 25, 2013) (holding that "no 'reminder notice postcards' may be sent"); *Anish v. Nat'l Sec. Corp.*, No. 10-80330-CIV, 2012 WL 3818283, at *2 (S.D. Fla. Sept. 4, 2012) (finding "[p]laintiff may not send out a reminder notice 10 days prior to the expiration of the opt-in period" because the court was persuaded by the rational that such reminders are "unnecessary and potentially could be interpreted as encouragement by the Court to join the lawsuit"). Lastly, Plaintiff request that Defendant post a copy of the notice to be mailed to potential plaintiffs at its business locations, to which Defendant does not object. Thus, it is recommended that a copy of the notice be posted at WFOR-TV's locations in Miami, Florida.

## III.     RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that Harapeti's Corrected Motion for Conditional Certification and Facilitation of Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b) (ECF No. 28) be **GRANTED, in part**. It is recommended that a collective action limited to those similarly situated employees who worked as Freelance Television Journalists or Producers for CBS Television at WFOR-TV in Miami in the three years preceding the filing of this action be conditionally certified.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Kathleen M. Williams, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers this on this 21st day of December, 2020.

_____
**LAUREN F. LOUIS**
**UNITED STATES MAGISTRATE JUDGE**