UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-CV-20961-WILLIAMS/LOUIS

SILVA HARAPETI,

    Plaintiff,

v.

CBS TELEVISION STATIONS, INC.,
a Foreign Profit Corporation, *et al.*,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment (ECF No. 156). This matter was referred to the undersigned United States Magistrate Judge for a Report and Recommendation by the Honorable Kathleen M. Williams, United States District Judge (ECF No. 159). Upon consideration of the briefing, the pertinent parts of the record, and being otherwise fully advised in the premises, the undersigned recommends **GRANTING in part and DENYING in part** Defendants' Motion for Summary Judgment.

**I.    BACKGROUND**

In her operative complaint, Plaintiff Silva Harapeti sues her former employer Defendant CBS Television Stations, Inc. ("CBS Television") and its parent corporation CBS Broadcasting Inc.[1] for unpaid wages and overtime due to misclassification of employee status under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA"), and for unlawful, retaliatory discharge in violation of the FLSA (ECF No. 95).

---

[1] CBS Broadcasting Inc., formally known as Group W Television Stations Inc., doing business as CBS Television Stations and/or CBS Television Stations Group is a Foreign Profit Corporation doing business in Miami-Dade County, Florida, which allegedly controlled Defendant CBS Television. CBS Broadcasting Inc. denies that it employed Plaintiff but did not move for summary judgment on this point.

1

Plaintiff alleges that throughout her employment as a freelance reporter with CBS Television at WFOR-TV in Miami ("WFOR"), she worked more than forty hours a week, but was never paid proper overtime rates, in violation of federal and state law. Plaintiff was paid on a *per diem* basis at a rate of $210.00 per day, regardless of the number of hours she worked on any given day (*id.* at ¶ 15). Plaintiff contends that her classification as an exempt employee was incorrect due to the number of hours worked, her qualifications and the amount of control CBS Television maintained over her work (*id.* at ¶¶ 17, 21, 24).

On September 24, 2021, Defendants filed a Motion for Summary Judgment on Counts I, II, and III of Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 56 and S.D. Fla. L.R. 56.1 (ECF No. 156). Plaintiff filed an omnibus response in opposition to both Defendants' Motion For Summary Judgment and Defendants' Motion for Decertification (ECF No. 176), and Defendants filed a Reply (ECF No. 182).

### A. Factual Background

The present disputes center around the primary job functions of the reporters and producers of CBS.[2] Plaintiff worked for CBS Television as a freelance reporter and producer, covering news stories across South Florida from February 2011 to March 2018. While working in the field, Plaintiff delivered live, on-air, stories. Plaintiff would investigate stories, chase down leads, and interview people such as police officers and other sources—including her own sources that she would develop. Plaintiff estimated that most–ninety percent–of her time was spent in the field: traveling to a location, gathering information, and interviewing subjects (ECF No. 174 ¶ 5).

Alexander Hernandez ("Mr. Hernandez"), a CBS executive producer since 2012, described reporters and producers as the individuals responsible for creating the content that ultimately makes

---

[2] The following facts are supported by Defendants' Statement of Material Facts (ECF No. 155); the undersigned further notes those facts disputed by Plaintiff *and* supported by record evidence.

2

it to the newscast (*id*. at ¶ 3). He stated that reporters create the news story out in the field: researching, investigating, and working their sources to collection information about particular stories (*id*. at ¶ 7). This includes searching and collecting videos and photos, then assembling the materials and information collected into a script that the reporter delivers live on the air (*id*.). Producers, according to Mr. Hernandez, assemble the newscast, decide the order of the stories created by the reporters, and make production choices about graphics, taglines, and anchor stories (*id*. at ¶ 9).

CBS recognizes two classifications of reporters and producers: fulltime, and freelance or "per diem" (ECF No 155-4 at ¶ 4). Though the positions are classified differently for purposes of pay and benefits, scant evidence is advanced to explain how the positions differ in their duties and performance. For example, Mr. Hernandez's declaration does not differentiate between fulltime and freelance employees in its general description of the duties of a reporter and/or producer.[3] Yet, as will be further explained below, Plaintiff alleges she persistently sought to be considered for the fulltime position and alleges that it was these requests that precipitated the retaliatory action that forms her claims. It is without dispute that Plaintiff solely worked as a *per diem* reporter and producer, but the Parties do dispute what primary duties Plaintiff had in these roles.

Liz Roldan ("Ms. Roldan"), the CBS News Director, testified that reporters would "go out, create content for the newscasts, provide journalistically sound stories that you could see on any given newscast on any given day" (ECF No. 155 at ¶ 17 citing ECF No. 155-3 at 24:1–4). Plaintiff, however, disputes this (ECF No. 178 at ¶ 17). Ms. Roldan also testified that "[t]he assignment editor, the assignment manager, the producer, producers, the managing editor, the executive producer" are the individuals who determine what makes a story possible (ECF No. 155-3 at 23:2–9). "It's a whole

---

[3] Drawing all inferences in in the light most favorable to the non-movant, this Court is prevented from assuming that Mr. Hernandez's statements about reporters generally apply to Plaintiff as a per diem employee.

involved process. It's not generally one person" (*id.*).

Mr. Hernandez similarly described the process as "collaborative" while also claiming "reporters are nonetheless ultimately responsible for preparing the story delivering it live on the air, and producers are nonetheless ultimately responsible for preparing the newscast" (ECF No. 155-4 at ¶ 11). He stated that reporters are "expected to develop the particular story they are working on using their own initiative, skills, and resources, and are required to be resourceful and creative in obtaining the necessary information to ultimately write and create the entire story 'package' with the facts, as well as the video and sound that accompanies those facts" (*id.* at ¶ 10). On the other hand, Mr. Hernandez explained that the newsroom helped reporters and producers develop their stories by supplying them with the information that is known at the time the story breaks (*id.* ¶ 11). Plaintiff testified that she "barely" found her own leads as a reporter and had a "few" sources (ECF No. 155-1 at 19:15–24).

Pitching, or presenting, ideas for stories was another duty of a CBS reporter; the Parties dispute the extent to which it was a primary duty or, more precisely, whether it was a duty that exhibits creativity on part of the reporter free from control of her supervisors. Defendants advance the testimony of Tiani Jones ("Ms. Jones"), another freelance reporter like Plaintiff, who testified that "[p]art of the job was to pitch every day" (ECF No. 181 at ¶ 90; ECF No. 155-6 at 38:16–39:2). Similarly, Ms. Roldan testified that reporters pitched stories "daily" and disputed the contention that "most" stories were assigned (ECF No. 155-3 at 67:4–22). Plaintiff disputes that pitching stories was a primary duty (ECF No. 178 ¶ 42). Ms. Jones further testified that while reporters regularly pitched stories, only some would air (ECF No. 155-6 at 38:19–23). "In Miami we were very short-staffed . . . A lot of times we didn't have enough reporters to do enterprised[4] reporting" (*id.* at 38:21–

---

[4] This term is used by both Parties but not defined. From context, *see* ECF No. 155-6 at 38:21–23, the Court understands this to refer to news stories generated by a reporter on their own, as opposed to stories assigned by a news director or to breaking news.

4

23). Likewise, Mr. Hernandez stated that reporters and producers were "encouraged" to pitch stories, however, "often times assignments are dictated by the day's news and reporters and producers would be assigned to cover important stories and breaking news" (ECF No. 155-4 at ¶ 6). Plaintiff testified that when she worked weekends, in particular, she was "assigned stories and you don't get to choose the story" (ECF No. 155-1 at 136:2–4).

As a reporter, Plaintiff would participate in the creation of video content, delegate, and instruct photographers on the visual content and supporting graphics for stories. Plaintiff disputes Defendants' contention that reporters were responsible for creating the content that would be aired as part of the newscast (ECF No. 178 at ¶ 17). Plaintiff wrote scripts for the stories she would report on, deciding the factual content of the script, and determine the order in which to present the voice over and sounds bites that were collected on the scene. These scripts were reviewed by Plaintiff's superiors prior to Plaintiff presenting live on the air. Defendants agree that these scripts were reviewed but contend it was limited to ensure factual accuracy, and in certain instances, to address any legal issues; Plaintiff disputes their characterization (ECF No. 178 ¶ 38). Plaintiff testified that in an unscripted scenario, when she was live on scene reporting a story and deciding what to say on the air, she needed to first run the facts by the assignment desk and executive producer (ECF No. 155-1 at 60:16–61:14).

At some point between 2015 and 2018, Plaintiff spoke with Cari Hernandez ("Ms. Hernandez"), an executive producer, about being misclassified in her duties. Plaintiff had "ongoing conversations" with Ms. Hernandez about being paid per diem, her desire to be full-time, and wanting to be classified either as a producer or a reporter (ECF No. 155 ¶ 48). Plaintiff generally avers that she had additional conversations about her classification and desire to be promoted to full-time with the assistant news director, Nick Bourne ("Mr. Bourne") (ECF No. 178 ¶ 52). Plaintiff was aware that CBS Television had a human resources department in the building, but did not raise

any issues about being misclassified with CBS Television's human resources department. Plaintiff testified that she suffered retaliation in 2018, specifically, that she was held back from covering stories, and that she was not immediately assigned to cover a story about a shooting at Parkland High School ("Parkland Shooting") (ECF No. 155-1 at 212:25–214:7).

## II. LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears "the stringent burden of establishing the absence of a genuine issue of material fact." *Suave v. Lamberti*, 597 F. Supp. 2d 1312, 1315 (S.D. Fla. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. To discharge this burden, the movant must identify an absence of evidence to support the nonmoving party's case. *Id*. at 325. After the movant has met its burden under Rule 56(c), the burden of production shifts, and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must come forward with "specific facts showing a genuine issue for trial." *Id.* at 587.

"A fact [or issue] is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005) (internal quotations omitted). Furthermore, "[a]n issue [of material fact] is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable'

6

or 'not significantly probative.'" *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Southeast*, 492 F. App'x 16, 26 (11th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party." *Id.* at 26-27 (citing *Anderson*, 477 U.S. at 252). Accordingly, if the moving party shows "that, on all the essential elements of its case on which it bears the burden of proof at trial no reasonable jury could find for the nonmoving party," then "it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Rich v. Sec'y, Fla. Dept. of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013) (citation omitted).

### III.     ANALYSIS

Defendants argue that they are entitled to summary judgment because (1) Plaintiff's primary job duties satisfy the creative professional exemption under the FLSA, therefore, Plaintiff is not entitled to overtime as a matter of law,[5] and (2) Plaintiff's retaliation claim fails as a matter of law.[6]

#### A.     Creative Professional Exemption

The FLSA requires employers to pay employees an overtime rate if they work more than 40 hours in a week, unless the employees qualify as exempt. *See* 29 U.S.C. §§ 207(a)(1), 213. "[A]n

---

[5] In their Motion, Defendants additionally asserts that Plaintiff falls within the administrative employee exemption. At a hearing conducted on January 25, 2022, defense counsel conceded the inapplicability of the administrative employee exemption (ECF No. 212 at 24:8-13). Accordingly, and having reviewed the arguments and evidence advanced in support of the Motion, it is my recommendation that Defendants' Motion on this exemption be denied, or alternatively, denied as withdrawn.

[6] Defendants' Motion additionally seeks summary judgment with respect to the plaintiffs who filed opt-in notices in this case. The Court has decertified the class, adopting the report and recommendation of the undersigned recommending that the motion to decertify be granted, to which no objections were filed. Those plaintiffs' claims are no longer asserted in this case and Defendants' Motion is accordingly moot on this ground.

employer can avoid paying overtime compensation if it proves that one of the FLSA's exemptions applies." *Kessler v. Lifesafer Serv. Providers, LLC*, 545 F. Supp. 2d 1244, 1246 (M.D. Fla. 2008) (citing *Wouters v. Martin County, Fla.*, 9 F.3d 924, 929 (11th Cir. 1993), *cert. denied*, 513 U.S. 812 (1994)).

An employer relying on an FLSA exemption has the burden of proving the applicability of that exemption. *Flynn v. R.F. Supply, Inc.*, 13-62686-CIV, 2014 WL 12531295, at *4 (S.D. Fla. Sept. 19, 2014) (citing *Klinedinst v. Swift Inv., Inc.*, 260 F.3d 1251, 1254 (11th Cir. 2001)). The burden of proving the applicability of a FLSA exception is satisfied by "clear and affirmative evidence." *Klinedinst*, 260 F.3d at 1254.

To qualify as a "creative professional" under the FLSA, "an employee's primary duty must be the performance of work requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor." 29 C.F.R. § 541.302(a). "Journalists may satisfy the duties requirements for the creative professional exemption if their primary duty is work requiring invention, imagination, originality or talent, as opposed to work which depends primarily on intelligence, diligence and accuracy." *Id*. at § 541.302(d). Additionally, "[e]mployees of . . . television and other media are not exempt creative professionals if they only collect, organize and record information that is routine or already public, or if they do not contribute a unique interpretation or analysis to a news product." *Id*.

> Reporters also do not qualify as exempt creative professionals if their work product is subject to substantial control by the employer. However, journalists may qualify as exempt creative professionals if their primary duty is performing on the air in radio, television or other electronic media; conducting investigative interviews; analyzing or interpreting public events; writing editorials, opinion columns or other commentary; or acting as a narrator or commentator.

*Id*.

Defendants claim that Plaintiff's duties fall under the creative professional exemption described in § 541.302(a) because her alleged duties were to develop and research stories, chase

8

down leads, interview witnesses, write, produce, and assemble the stories that she delivered live on-air. Defendants insist that Plaintiff, as a journalist, carried out many of her duties with minimal oversight and that her duties went beyond just gathering facts. Defendants describe Plaintiff as "the precise type of journalist the FLSA contemplates as exempt," (ECF No. 182 at 3), and maintain that Plaintiff's duties required invention, imagination, originality, and talent. In support, Defendants primarily rely on *Freeman v. NBC,* 80 F.3d 78 (2d Cir. 1996). In *Freeman*, the Second Circuit reversed the district court's finding that domestic news writers, editors, producers, and reporters from an NBC television station were not creative professionals exempt from the FLSA's overtime provisions. *See id.* at 83. Defendants compare Plaintiff to the multiple plaintiffs in *Freeman* and claim that not only do her "stated responsibilities fit neatly within those same responsibilities of the plaintiffs in *Freeman*," Plaintiff also "researched, wrote, and produced, live on the air" (ECF No. 156 at 11).

In her Response, Plaintiff disputes that her duties fall under the creative professional exemption and argues that reporters do not determine what makes a story, rather they report facts, not their opinions, and they are assigned the stories to cover. Moreover, Plaintiff claims that she did not have the latitude of a creative professional as enterprise stories were infrequently approved and reporters were discouraged from refusing news assignments to cover. Plaintiff asserts that news reports were submitted to superiors for approval. Regarding Defendants' reliance on *Freeman*, Plaintiff argues that case was decided prior to the FLSA's 2004 revisions and is therefore not instructive. Prior to 2004, FLSA exemptions were decided by a "short test" and a more exacting "long test." *Freeman*, 80 F.3d at 83–84 (noting that long test is significantly more difficult to meet than short test and interpretations relating to the long test do not also apply to the short test). Plaintiff notes that the Department of Labor ("DOL") did away with these tests when it revamped its regulations in 2004.

Defendants reply that there is no substantive difference between the pre-2004 creative exemption, determined by the short and long tests, and the present creative professional exemption. *See* 69 Fed. Reg. 22122, at 22157 (noting that the proposed 2004 regulations "adopted the primary duty test of the existing regulations with few changes"). Both the prior and current regulations utilize the same language: the employee's primary duties involve "invention, imagination, or talent." *Compare Freeman*, 80 F.3d at 82 (citing 29 C.F.R. § 541.3(e)) with 29 C.F.R. § 541.302(a).

A court must distinguish "work requiring invention, imagination, originality or talent" from "work that primarily depends on intelligence, diligence and accuracy." 29 C.F.R. §§ 541.302(a); 541.302(d). Defendants bear the burden to demonstrate entitlement to summary judgment on this affirmative defense through "clear and affirmative evidence." *Klinedinst*, 260 F.3d at 1254. Recognizing that the Court cannot rely on inferences drawn in the movant's favor to carry its burden on summary judgment, the undersigned has reviewed the evidence adduced and concludes that it supports the inference here that Plaintiff's duties required intelligence and diligence, as opposed to creativity.

Defendants, despite recognizing that there is a difference between fulltime and freelance positions, provide evidence of a general range of duties performed by reporters and producers that are not specific to Plaintiff. Although this work can involve a great deal of invention, imagination, originality and talent, the regulations make clear that it is not the employee's general field that determines the employee's status – "what matters is what this particular employee's primary duties *actually were.*" *Kadden v. VisuaLex*, LLC, 910 F. Supp. 2d 523, 538 (S.D.N.Y. 2012).

Moreover, "[t]he term 'primary duty' means the principal, main, major or most important duty that the employee performs," and "[d]etermination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." § 541.700(a). Plaintiff demonstrated that she was often assigned which stories to

10

cover and she developed the news report based on the information provided to her.

Defendants contend that Plaintiff's creativity is demonstrated by the absence of control over her work product, for example, that her scripts presented for review were *often* approved with simple affirmations, such as, 'Ok.'" *See* ECF No. 155 at ¶ 37. Though Defendants generalize this event and characterize the frequency that her scripts were summarily approved as "often," this is a strained characterization of the evidence advanced in support. Defendants rely on one email Plaintiff received from Alissa Merlo ("Ms. Merlo"), a managing editor and executive producer (ECF No. 155-1 at Exh. 5). Whether it was often or isolated, moreover, the simple affirmation here fails to reveal clear evidence of Defendants' entitlement to the affirmative defense that Plaintiff's primary duties were creative; rather, and as previously noted, the evidence equally supports an inference that Plaintiff's scripts merely met the criteria she was assigned to execute, and she was diligent in that performance.

Defendants' reliance on *Freeman* warrants mention as well. There are some similarities between the cases, however, even the district court from *Freeman* denied summary judgment after the defendants failed to prove that the plaintiffs fell within the terms of the FLSA exemptions. 80 F.3d at 80. Like *Freeman*, Defendants have not met their burden at the summary judgment stage. Whether Plaintiff is an exempt creative professional is a factual question for resolution at trial. *See, e.g.*, *Kadden*, 910 F. Supp. 2d 523 (following a bench trial, the district court found the employee was not an exempt creative professional nor an exempt administrative employee under the FLSA). Accordingly, it is my recommendation that Defendants' Motion for Summary Judgment on the affirmative defense be denied.

**B.     Retaliation**

The FLSA protects persons against retaliation for asserting their rights under the statute. *See* 29 U.S.C. § 215(a)(3) (Employers are prohibited "from discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted

or caused to be instituted any proceeding under [the FLSA]."). Where the plaintiff does not present any direct evidence of retaliatory discharge, circumstantial evidence may be evaluated under the burden shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, (1973). *See Ash v. Sambodromo, LLC*, 676 F. Supp. 2d 1360, 1373 (S.D. Fla. 2009) (citing *Raspanti v. Four Amigos Travel, Inc.*, 266 Fed. Appx. 820, 822 (11th Cir. 2008)).

Plaintiff claims that as a consequence of her repeatedly asking that she be paid as a full-time employee, (ECF No. 95 at ¶ 21), she suffered retaliation and was placed on the weekend shift indefinitely (ECF No. 95 at ¶ 23). Specifically, Plaintiff alleges that she made several inquiries regarding Defendants' classification of her as a "freelancer" to Defendants' Special Projects Executive Producer, Ms. Hernandez, and to Ms. Roldan. While a freelancer, Plaintiff avers she was repeatedly told she would be considered for a full-time reporter position, however, she "was always passed over" (ECF No. 95 ¶ 17). Plaintiff expressed her frustrations to Ms. Roldan who informed her that the full-time position was not available to her. Ms. Roldan eventually informed Plaintiff that there was an available position for her as an on-air journalist on Sunday mornings, however, this change came without the proper classification, rate of pay, or benefits despite Plaintiff working in excess of forty hours per week. Plaintiff alleges that she was "misclassified" as an exempt producer or exempt reporter, despite working as a Freelance Television Journalist and this classification enabled Defendants to deny her the corresponding higher pay and benefits. Plaintiff asserts that as a result of continually asking to be classified as a full-time employee, Plaintiff was retaliated against by being placed on the weekend shift indefinitely (ECF No. 95 at ¶ 23).

Defendants move for summary judgment on Plaintiff's FLSA retaliation claim alleging that: (1) Plaintiff cannot establish a prima facie case of retaliation; and (2) Defendants have legitimate, non-discriminatory reasons sufficient to rebut Plaintiff's prima facie case, and Plaintiff cannot establish pretext.

12

1.     Prima Facie Case of Retaliation

"A prima facie case of FLSA retaliation requires a demonstration by the plaintiff of the following: (1) she engaged in activity protected under [the] act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action." *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000) (citation and internal quotation marks omitted, alteration in original).

a)     Protected Activity

The FLSA protects both oral and written complaints. *Kasten v. Saint–Gobain Performance Plastics Corp.*, 563 U.S. 1 (2011). Also, "a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Id.* at 1335.

Defendants argue that Plaintiff never lodged a complaint, either written or oral, that was sufficiently clear and detailed. Plaintiff spoke with her superiors about allegedly being misclassified as a producer when she was doing the job of a reporter and also as a freelancer when she was working as a full-time employee (ECF No. 155-1 at 116:22–117:15), however, Defendants aver that none of these complaints have anything to do with the FLSA or any allegedly unlawful activity. Defendants argue that although Plaintiff discussed not being paid overtime with several individuals such as Mr. Bourne and Ms. Hernandez (*id*. at 140:15–141:10), there is no evidence that she ever lodged a complaint to provide Defendants with "fair notice."

In Response, Plaintiff states that "she complained about her misclassification and the payment of her wages and was retaliated because of her complaints" (ECF No. 176 at 15).[7] Defendants, in Reply, highlight Plaintiff's conclusory statement and emphasize that Plaintiff "makes

---

[7] Plaintiff's Response (ECF No. 176 at 15) cites to the "Declaration of Silva Harapeti (ECF 156);" while ECF No. 156 is not Silva Harapeti's declaration, the undersigned assumes that the intended citation is the declaration filed at ECF No. 174.

13

no attempt to articulate how her conclusory allegation" satisfies her burden.

Plaintiff contends that she raised the issue to her superiors of why she was "misclassified . . . as a producer when [she] was doing a reporter's job" and about "being misclassified as a freelancer when [she] was working as a full-time employee." (ECF No. 155 at ¶¶ 47–50). Even if these are considered "complaints," being misclassified as a producer or freelancer is not actionable conduct under the FLSA. *See Altare v. Vertical Reality MFG, Inc.*, No. 19-CV-21496, 2020 WL 209272, at *2 (S.D. Fla. Jan. 14, 2020) ("The FLSA's plain text does not provide a cause of action for misclassification and the Court is not empowered to create one."); *see also Alvarado v. I.G.W.T. Delivery Systems, Inc.*, 410 F. Supp. 2d 1272 (S.D. Fla. 2006). In *Alvarado,* this Court granted summary judgment for the defendants on the plaintiffs' retaliation claim because the plaintiffs could not show they had engaged in a protected activity. In that case, the plaintiffs' retaliation claim was based, in part, on letters signed by the plaintiffs "requesting, among other things, an increase in salary, reorganization of delivery routes, the cessation of discriminatory comments on the job, and increased courtesy and respect in company memorandums." *Id.* at 1278. This Court concluded that the letters "fail[ed] to meet the elements required for a prima facie case [of retaliation]" because "[t]he letters themselves d[id] not appear to clearly assert rights under the [FLSA] in that they make no specific mention of overtime pay or invoke the FLSA." *Id.* at 1279.

Plaintiff disputes Defendants' assertion that she never complained to her superiors that she thought Defendants were violating the law by not paying her overtime (ECF No. 178 at ¶ 52) and supports her claim with the following declaration: "Nick Bourne was the Assistant News Director, my superior, at the time of my employment, and I have several conversations relating to my complaints of not being paid overtime" (ECF No. 174 at ¶ 6). Plaintiff's statement in her Declaration is insufficient to create a material fact over whether she engaged in protected activity; such general averments are not sufficiently clear to give Defendants notice of the violation she now alleges. *See*

14

*Alvarado,* 410 F. Supp. 2d at 1279; *Etienne v. Muvico Theaters, Inc.,* No. 01–6265–CIV, 2003 WL 21184268, * 18 (S. D. Fla. Mar. 11, 2003) (the plaintiff failed to make prima facie retaliation claim under FLSA where plaintiff did not present evidence "that he threatened to report labor-law violations, or file a complaint about business practices at the theater."). Moreover, the statement contradicts her cross-examined testimony at deposition, where she testified that she never complained to her superiors that she thought Defendants were violating the law by not paying her overtime (ECF No. 155-1 at 134:22–135:2). Plaintiff has failed to establish that she was engaged in a protected activity, and her claim fails on the first element. Nonetheless, the undersigned has analyzed all of the remaining elements of Plaintiff's retaliation claim, and similarly finds the evidence insufficient to go to a jury, as explained below.

                b)        Adverse Employment Action

Defendants contend that Plaintiff cannot show that she suffered an adverse employment action. Defendants contest that the failure to dispatch Plaintiff to cover the Parkland Shooting, while disputed, is the "only alleged retaliatory conduct articulated by Plaintiff" (ECF No. 156 at 16).[8]

Defendants argue that this alleged adverse employment action is "demonstrably false," because Plaintiff *was* assigned to cover the event, and actually reported live on multiple days (*id.*). Even if Plaintiff's assertions are true, Defendants argue that the decision not to assign a reporter to a particular story is not a legally cognizable adverse employment action. Defendants argue that Plaintiff's non-assignment is not so substantial and consequential that it alters her employment status and, thus, cannot constitutes an adverse employment action.

Plaintiff indeed advances evidence of this alleged adverse employment action in the form of her Declaration, which explains that every reporter, videographer, and producer was mobilized to

---

[8] At her deposition, Plaintiff testified that she was "withheld from covering stories" and specifically discussed the Parkland Shooting as an example (ECF No. 155-1 at 212:25-214:7).

the Parkland High School, yet she was initially assigned to an entirely different story before being sent to cover the Parkland Shooting (ECF No 174 at ¶ 8) ("Finally around 5:00 pm, Executive Producer Jorge Gonzales, in charge for the 11pm newscast told me and my videographer to 'drive toward Parkland High School.' This meant that being sent out to the story that late in the day would mean that I would sit in traffic for hours and go nowhere.").

In their Reply, Defendants argue that Plaintiff has changed her claim. Defendants contend that Plaintiff now asserts that the retaliation was not that she did not get assigned to the Parkland Shooting story, but rather she was not immediately assigned to the story.

The uncontested evidence reveals that Plaintiff covered the Parkland Shooting, reporting live on February 14, 2018, as well as on February 15, 16, 18, and March 9 (ECF No. 178 at ¶ 56). Plaintiff also confirmed in her Declaration that "I did report on the Parkland Shooting in the days that followed but that was only because I was the only reporter/producer scheduled on a weekend shift" (ECF No. 174 at ¶ 9). The Court considers then whether the *delay* in assigning Plaintiff, as alleged, to cover this event constitutes an adverse employment action.

Neither alleged adverse employment actions—consisting of staffing Plaintiff on the weekend shift indefinitely or not immediately assigning her to cover to the Parkland Shooting story— constitute adverse employment decisions sufficient to support an FLSA retaliation claim. Although Plaintiff alleges she was "humiliated, ridiculed and made an example out of before my peers in the newsroom for several hours" (ECF No. 174 at ¶ 8), she fails to explain, much less prove, that this event substantially altered her employment. "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1231 (11th Cir. 2006) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753–54 (1998)). Plaintiff has offered no evidence that her

allocation to the weekend shift or not being immediately assigned to the Parkland Shooting altered her compensation, terms, conditions, or privileges of employment or affected her status as an employee.

c) Causal Connection

Defendants argue that even if Plaintiff engaged in protected activity and suffered adverse action, her retaliation claim still fails because she cannot demonstrate a causal connection between her alleged complaints and lack of immediate assignment to the Parkland Shooting because there is no evidence that the individual who decided to withhold Plaintiff from the Parkland Shooting story was "at all aware of the purported protected conduct" (ECF No. 156 at 16).

In her Response, Plaintiff argues that an employee may establish that the adverse employment decision was causally related to the protected activity by demonstrating that there is some relation between the protected activity and the adverse action. Plaintiff relies on *Culver v. Gorman & Co.*, for the proposition that a plaintiff may establish a FLSA retaliation claim by "showing that the protected conduct was a substantial or motivating factor in the employer's decision." 416 F.3d 540, 545 (7th Cir. 2005). Plaintiff testified that she spoke with Mr. Bourne and Ms. Hernandez in "early February 2018" "about being misclassified as an employee, about being misclassified as a freelancer, about not getting paid overtime" (ECF 178 at ¶ 47 (citing 155-1 at 142:10–145:12)). Likewise, the Parkland Shooting, and Plaintiff not being immediately assigned to that story, occurred on February 14, 2018. Plaintiff contends that "she complained about her misclassification and the payment of her wages and was retaliated [against] because of her complaints."

To establish causation, a plaintiff must show that: (1) the decisionmakers were aware of [her] protected conduct and (2) [her] protected activity and the adverse employment action were not wholly unrelated." *Henderson v. Fedex Express*, 442 F. App'x 502, 506 (11th Cir. 2011) (citation

17

omitted). Plaintiff has done neither. The undersigned recognizes the temporal proximity between when Plaintiff spoke with her superiors and the Parkland Shooting story, however, Plaintiff does not offer evidence that Jorge Gonzales, the executive producer who did not send Plaintiff to cover the story until 5:00 PM, was even aware of her complaints. *See Urzola v. Thumbelina Learning Ctr. Corp.*, No. 12-20767, 2012 WL 3757072, at *5 (S.D. Fla. Aug. 28, 2012) (granting summary judgment on FLSA retaliation claim where the plaintiff did "not offer[] any substantive evidence of [the decisionmaker's] actual knowledge of [her] complaints").

### 2. Pretext

The *McDonnell Douglas* burden-shifting analysis applies in cases of retaliation relying on circumstantial evidence, such as this one. *Brown v. Alabama DOT*, 597 F.3d 1160, 1181 (11th Cir. 2010). If the Court finds that Plaintiff met her burden to establish a prima facie case of retaliation, the burden shifts to Defendants to rebut the presumption by articulating a legitimate, non-discriminatory reason for the adverse employment action. *Id.* at 1181–82 (citing *Bryant v. Jones,* 575 F.3d 1281, 1307–08 (11th Cir. 2009) (internal citations and quotation marks omitted)). If Defendants carry this burden, the presumption raised by the prima facie case is rebutted and drops from the case. *Id.* After Defendants make this showing, Plaintiff has a full and fair opportunity to demonstrate that Defendants' proffered reason was merely a pretext to mask discriminatory actions. *Id*.

Defendants argue that they are still entitled to summary judgment even if Plaintiff meets her burden in establishing a prima facie case of FLSA retaliation because Plaintiff cannot show that Defendants' reason for the adverse employment action was pretextual. Specifically, Defendants contend that Plaintiff has only her "subjective feelings and opinions" that not being assigned to the Parkland Shooting was retaliatory (ECF No. 156 at 17). Defendants argue that articulable reasons for who was assigned to the Parkland Shooting exist to include the location of other reporters and

the seniority and experience of certain reporters given the severity and seriousness of this particular news story.

In her Response, Plaintiff only states that she faced retaliation after she complained about being misclassified and the payment of her wages. Defendants reply that Plaintiff lacks a rebuttal argument and insist that Plaintiff "makes no effort to demonstrate pretext," because she cannot do so.

As noted above, Plaintiff *was* assigned to the Parkland shooting. Defendants advance legitimate, non-discriminatory reasons for the alleged adverse employment action, such as the location of other reporters to Parkland High School and the seniority and experience of certain reporters given the severity and seriousness of the event. Plaintiff does not meaningfully respond to Defendants' evidence much less establish that Defendants' reasons were merely a pretext to mask discriminatory actions. Accordingly, the undersigned recommends that Defendants be entitled summary judgment on the claim for retaliation.

## IV. RECOMMENDATION

Based on the foregoing, it is the Recommendation of the undersigned that Defendants' Motion be **GRANTED in part and DENIED in part**. The Motion should be granted with respect to Plaintiff's claim of retaliation; the Motion should be denied with respect to Defendants' entitlement to classify Plaintiff as an exempt employee. Additionally, the Motion should be denied as moot with respect to the Opt-In Plaintiffs.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Kathleen M. Williams, United States District Court Judge for the Southern District of Florida, by no later than March 11, 2022.[9] Failure to timely file objections will bar a *de*

---

[9] The recommendations herein were announced in open court to the Parties at the hearing conducted on January 25, 2022. Accordingly, the Parties have had more than 14 days to formulate objections and thus, the period to object has been shortened slightly from the date of this written Report and Recommendation.

19

*novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020). Responses to such objections, if any, shall be filed no later than March 17, 2022.

    **RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida, this 1st day of March, 2022.

_____
LAUREN LOUIS
UNITED STATES MAGISTRATE JUDGE