# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO: 20-CV-20961-KMW

SILVA HARAPETI,

     Plaintiff,

vs.

CBS TELEVISION STATIONS INC., *a
Foreign Profit Corporation*, *et al.*,

     Defendants.

_____/

### REPLY IN FURTHER SUPPORT OF EXPEDITED MOTION FOR SANCTIONS

Pursuant to Rule 7.1 of the Local Rules for the Southern District of Florida, Defendants CBS Television Stations Inc. and CBS Broadcasting, Inc. f/k/a Group W Television Stations, Inc. d/b/a CBS Television Stations and/or CBS Television Stations Group ("Defendants"), by and through undersigned counsel, hereby submit this Reply in Further Support of Expedited Motion for Sanctions (DE 252) ("Motion").

### INTRODUCTION

1.     At its core, the Response (DE 265) filed by Plaintiff Silva Harapeti ("Plaintiff") submits two arguments as to why sanctions should not be granted. Neither hold water. First, Plaintiff suggests that her attempts to solicit media interest through falsehoods concerning the nature of the claims to be tried should be excused because Plaintiff did not receive any instructions from her counsel or the Court until *after* she engaged in the social media campaign in question. *See* Resp. at ¶¶ 1–2. That is not true. Plaintiff's social media campaign continued even after 6:00 p.m. on April 27th when she was purportedly able to confer with her counsel regarding the Court's

order, and she even posted a link to her "essay" about the trial the next morning—the very same morning the jury was empaneled. *See id.* at ¶ 2 (asserting that counsel was not able to confer with Plaintiff regarding the Court's order at the April 27th pretrial conference until 6:00 p.m. that evening). Even before April 27th, Plaintiff was well aware of the scope of the trial and that her representations in public podcasts and social media postings in the days before trial were inaccurate. In fact, Plaintiff was present before the Court on April 18, 2022 for calendar call when the Court made explicitly clear what claims would and would not be tried. Second, Plaintiff claims that sanctions are inappropriate because doing so would violate her due process rights given that she did not receive "proper notice." *See* Resp. at ¶¶ 5–6. But, Plaintiff conflates "notice that her conduct would be sanctionable" with the notice due process requires, *i.e.*, notice and a right to be heard. In the context of sanctions, due process requires the latter, which Plaintiff received via Defendants' Motion (notice) and the opportunity to present argument as to why sanctions should not be issued (through her Response).

2.     For these reasons, and those reasons set forth below and in the Motion, Defendants' respectfully request that the Motion be granted, monetary sanctions be issued against Plaintiff, or, at a minimum, Plaintiff be ordered to pay Defendants' attorney's fees for bringing this Motion.

## **ARGUMENT**

3.     Plaintiff's assertion that her conduct is excusable because she was "not present in Court for the pretrial conference on April 27, 2022" and, therefore, not aware of the Court's instruction under *Mai v. Nine Line Apparel, Inc.*, 2019 U.S. Dist. LEXIS 176525 (S.D. Ga. Oct. 10, 2019) ignores the true timeline of events.

1.     On April 18, 2022, the parties—including Plaintiff herself—attended calendar call.

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131 – (305) 789-8900

2.      At calendar call, the Court made clear the scope of the issues to be tried in this case, emphasizing the fact that Plaintiff's individual claim for overtime compensation under the FLSA concerned Plaintiff's primary job duties, and those duties alone.  The Court expressly noted that any matters related to Plaintiff's separate allegations of discrimination in Case No. 20-cv-22995 would not be permitted, nor would the Court allow evidence concerning Plaintiff's now-dismissed allegations of retaliation.

3.      Despite the Court's unambiguous clarification on April 18th as to the scope of trial, on April 25th, Plaintiff appeared on a YouTube program (on a channel with over 830,000 subscribers) using taglines such as "CBS *Discrimination* Lawsuit Trial Begins Apr. 28, 2022" (emphasis added) and that Defendants were facing a "Class-Action Lawsuit for Unpaid Wages." Plaintiff, who holds herself out as a journalist of integrity and media specialist, was undoubtedly aware of the mischaracterizations she was perpetuating, as this case does not involve claims of discrimination, nor are there any remaining class allegations.  Thus, her contention that her conduct is excusable because she had not conferred with her counsel until 6:00 p.m. on April 27th is nullified by the fact that prior to April 27th the Court had been clear about what this case was, and was not, about.

4.      Plaintiff's assertion is further belied by the fact that Plaintiff repeated her various inaccurate public statements concerning the scope of the case *even after* speaking with her counsel at 6:00 p.m. on April 27th.  On April 28, 2022 (the day the trial started), at approximately 6:00 A.M., Plaintiff continued her social media campaign, notwithstanding the Court's explicit reference to the instruction given in *Mai v. Nine Line Apparel, Inc.*, 2019 U.S. Dist. LEXIS 176525 (S.D. Ga. Oct. 10, 2019):

> Accordingly, no party or counsel for the parties shall give or authorize any extrajudicial statements or interviews relating to this

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131 – (305) 789-8900

> case, which a reasonable person would expect to be disseminated by means of public communication if there is a substantial likelihood that such dissemination will interfere with a fair trial, except that the lawyer or party may quote from or refer without comment to public records of the Court in the case. Parties and counsel for parties must refrain from giving or authorizing any extrajudicial statement or interview to a media outlet or source that relates to this action and which is intended to influence public opinion regarding the merits of this case. This case should be tried in the courtroom, not in the media.

*Id.* at *18. Indeed, Plaintiff posted screenshots of her "Empowering Our Voices" article for her 10,200 Instagram followers to read. *See* Ex. 8 to Motion (DE 252-8) (April 28th Instagram). The article states, among other things, that her lawsuit has "been a David vs. Goliath kind of fight pitting the multi-billion dollar media conglomerate against freelance workers at CBS and its 28 owned-and-operated Television Stations," despite the fact that this case does not have any class allegations and *never* involved employees at Defendants other "28 owned-and-operated Television Stations." *See id.* Plaintiff also misrepresented the scope of the trial, inaccurately stating that "[a]t issue are unpaid wages *and discrimination under the Equal Pay Act*," and invited readers to come view the trial "on April 28, 2022 in Wilkie D. Ferguson Jr. US Federal Court in Miami." *Id.* (emphasis added).

5.      Accordingly, that Plaintiff conferred with her counsel at 6:00 p.m. on April 27th is a red herring. Plaintiff was well aware of the scope of this trial and the Court's directives at the time she feverishly sought to drum up media interest in this case.

6.      In seeking to flip the facts on their head, Plaintiff criticizes Defendants for the fact that they did not "file for a 'gag order'" or "otherwise file any motion in limine directed to Plaintiff's social media or regarding Plaintiff's participation in a YouTube news report" until April 29th. *See* Resp. at ¶ 3. Litigants are expected to govern themselves appropriately when before the Court and the suggestion that it was somehow Defendants' obligation to burden the Court with

(unnecessary) motion practice to ensure that Plaintiff did not engage in bad faith conduct prior to her engaging in that conduct should be cast aside.[1]

7.     Plaintiff next contends that she should not be sanctioned because she was not "on notice that her conduct would be sanctionable." *See* Resp. at ¶¶ 5–8.  However, as noted *supra*, Plaintiff continued to solicit interest on social media even after her counsel presumably advised her not to, and continued to misrepresent the scope of the trial in this matter despite the clearly defined evidentiary boundaries of the case.  For this reason alone, Plaintiff's assertion that she cannot be sanctioned due to an alleged lack of notice should be rejected.

8.     More importantly, Plaintiff confuses the "notice" that due process requires with her own invented notice requirement, *i.e.*, that she receive "notice that her conduct would be sanctionable." *See* Resp. at ¶ 6.  Due process requires that Plaintiff receive "proper notice and an opportunity to be heard." *See* Resp. at ¶ 6 (citing *Mai*, 2019 U.S. Dist. LEXIS 176525).  Plaintiff cites no authority to support her contention that she must have been provided "notice that her conduct would be sanctionable," as that is not the standard.  (Even if it was the standard, it is well-established that litigants may be sanctioned by engaging in bad faith conduct, such as trying to garner media attention and taint the jury venire, as the case law cited in the Motion makes clear.)

9.     The notice and opportunity referenced in *Mai*—and the many other cases confirming the axiomatic principle that the imposition of any sanction must comport with due process—has been provided in the form of this briefing.  As the *Mai* court noted:  "Notice can come from the party seeking sanctions, from the court, or from both, and the accused must be given an opportunity to respond to the invocation of such sanctions and to justify his actions."

---

[1] Moreover, Plaintiff's social media campaign did not ramp up substantially until after the pretrial conference on April 27th.  Defendants' Motion followed only two days later, and was researched and drafted while Defendants were simultaneously preparing for trial.

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131 – (305) 789-8900

*Mai*, 2019 U.S. Dist. LEXIS 176525, at *7 (citing *In re Mroz*, 65 F.3d 1567, 1575-76 (11th Cir. 1995)).  Plaintiff's Response is her opportunity to be heard, and she has failed to justify her repeated attempts to influence the jury venire even after the Court's initial instructions at calendar call (April 18th) and at the pretrial conference (April 27th).[2]

10.     Plaintiff cites *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976) in support of her claim that "Defendants cannot complain about the result of the trial . . . as it is clear that no harm came to Defendants during the trial in this cause." *See* Resp. at ¶ 7.  But, Plaintiff's reference to *Stuart* misses the mark.  *Stuart* concerned a prior restraint on the press at large in a criminal case, not on an individual litigant in a civil case.  For this reason alone, *Stuart* is inapplicable here.

11.     To the contrary, in circumstances involving litigants, the law is settled that a district court has the inherent authority to impose silence and restrict litigants for "both conduct before the court and that beyond the court's confine."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1320 (11th Cir. 2002) ("'Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.'").  This is particularly true when the party acts "in bad faith, vexatiously, wantonly, or oppressively,"

---

[2] The fact that the extrajudicial comments in *Mai* came after the defendant filed a motion to seal directed toward the plaintiff's extrajudicial comments does not undermine its persuasiveness. *See* Resp. at ¶ 5 (arguing *Mai* is inapposite "because in that case, the Defendant had already filed a motion to seal putting the plaintiff in that action on notice . . ."). The *Mai* court aptly recognized that the timing of Plaintiff's extrajudicial comments, which followed the defendant's motion to seal, was indicative of bad faith and demonstrated her "intention to influence this action in her favor." *See Mai*, 2019 U.S. Dist. LEXIS 176525, at *13–14. So, too, does the timing here confirm bad faith. Plaintiff engaged in a far more substantial social media campaign compared to the one at issue in *Mai*, and did so in through (inaccurate) statements irreconcilable with the Court's prior rulings concerning the scope of the case and through social media efforts deployed even after Plaintiff was expressly advised to cease her attempts to influence the outcome of the trial. It is undisputed that Plaintiff's efforts commenced in the week before trial, and persisted until only hours before the parties appeared in court to select a jury. *See* Mot. at ¶¶ 2–10.

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131 – (305) 789-8900

*Stimson v. Stryker Sales Corp.*, 835 F. App'x 993, 998 (11th Cir. 2020) (citing *Chambers*, 501 U.S. at 45–56).  Under such circumstances, sanctions for bad faith include, among other things, dismissal, monetary sanctions, and/or attorney's fees.  *Id.* (citing *Chambers*, 501 U.S. at 45) (affirming order requiring plaintiff to pay the costs of litigating the motion for sanctions).[3]

12.     Moreover, *Stuart* says nothing about the principle Plaintiff cites it for—that sanctions are not warranted because Defendants were ultimately successful at trial.  Defendants' success at trial does not excuse Plaintiff's bad faith conduct.

13.     Plaintiff's remaining arguments are equally unpersuasive.  Plaintiff argues that because she "is not regulated by any bar rule she cannot be held accountable as a lawyer representing a litigant might be so hold."  *See* Resp. at ¶ 9.  Yet, Plaintiff does not acknowledge or address the fact that courts within this Circuit have held that, where local rules govern extrajudicial comments of counsel, the judiciary retains the "inherent power to sanction *litigants and their attorneys* to ensure" that the parties receive a fair trial.  *See Mai*, 2019 U.S. Dist. LEXIS 176525, at *14–18 (emphasis added).  As Defendants argued in the Motion, the same standard should be adopted here, as this approach is consistent with Eleventh Circuit precedent holding that "there is nothing preventing a federal court from exercising its inherent power to sanction an attorney, *a party*, or a law firm for their subjective bad faith."  *See Glatter v. Mroz (In re Mroz)*, 65 F.3d 1567,

---

[3] In addition to citing *Stuart*, Plaintiff also cites to *Near v. Minnesota*, 283 U.S. 697 (1931) and *Branzburg v. Hayes*, 408 U.S. 665 (1972), Resp. at ¶ 11, neither of which apply here.  Similar to *Stuart*, both *Near* and *Branzburg* concerned the rights of the press, not litigants.  *Near* concerned "the suppression as a public nuisance of a newspaper or periodical" that had been targeted by a local ordinance after being deemed malicious, scandalous, and defamatory.  Although the issue of prior restraints was discussed in *Near*, it is nonetheless dissimilar to the circumstances here, where a litigant, through calculated social media posts, has attempted to manipulate the jury pool and sway public opinion in her favor through misrepresentation and despite the Court's instructions.  *Branzburg*, on the other hand, is even further afield.  *Branzburg* addressed whether a "requiring newsmen to appear and testify before state or federal grand juries abridges the freedom of speech and press guaranteed by the First Amendment."  *Branzburg*, 408 U.S. at 667.

1576 (11th Cir. 1995) (emphasis added); *see also Chambers*, 501 U.S. at 43 (noting that courts retain inherent authority to sanction an abuse of the judicial process).

14.    Ultimately, the requested monetary sanction of $50,000 remains reasonable where, as here, a litigant engaged in a series of bad faith acts in direct contravention to the Court's orders with the intention of drawing publicity in her favor and to taint the jury venire.  This amount was appropriately tethered to Plaintiff's maximum economic damages at the time the Motion was filed (*i.e.*, prior to the Court's granting Defendants' Rule 50 motion on the issue of willfulness under the FLSA).  Critically, Plaintiff does not dispute either the amount of monetary sanctions requested or that monetary sanctions are inappropriate on the merits.   Plaintiff's only argument in response to the request for monetary sanctions is that the imposition of such a sanction would violate Plaintiff's rights "without proper notice."  *See* Resp. at ¶ 8.  As noted, however, Plaintiff has received notice by virtue of the Motion, and has been provided an opportunity to respond pursuant to Local Rule 7.1.  Beyond this flawed argument, Plaintiff has otherwise failed to address why monetary sanctions are inappropriate on the merits.

15.    Plaintiff's reference to *Rodriguez by & Through Posso-Rodriguez v. Feinstein*, 734 So. 2d 1162, 1163 (Fla. 3d DCA 1999) in this regarding is unavailing.  *See* Resp. at ¶ 8.  *Rodriguez* did not concern the imposition of monetary sanctions, but only the propriety of a trial court's protective order enjoining the plaintiff and her counsel from discussing the case with the press.[4] *See Rodriguez*, 734 So. 2d at 1163–65.  Monetary sanctions remain warranted here based on

---

[4] Unlike the Court's order here, the order in *Rodriguez* was not "narrowly tailored to preclude only extra-judicial statements which are substantially likely to materially prejudice the trial." *Rodriguez*, 734 So. 2d at 1164.  To the contrary, the Court's "gag order" as to all parties in this case was narrowly tailored to the facts of this case.

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131 – (305) 789-8900

Plaintiff's bad faith conduct, which despite the result at trial, was a deliberate attempt to sway public perception of this case and tarnish the jury pool in her favor.[5]

16.     At a minimum, Defendants should be entitled to their attorney's fees for bringing the Motion, which Defendants would not have pursued had Plaintiff abided by the Court's instructions.  *See Stimson*, 835 F. App'x at 998 (citing *Chambers*, 501 U.S. at 45) (affirming sanctions order requiring plaintiff to pay the costs of litigating the motion for sanctions); *Mai*, 2019 U.S. Dist. LEXIS 176525, at \*14, \*18 (granting defendant's motion for sanctions and directing plaintiff to pay fees and expenses associated with that motion where plaintiff gave media interviews and publicized those interviews and articles on her Facebook page); *Diamond Consortium, Inc. v. Manookian*, 2017 U.S. Dist. LEXIS 122625, at \*29–41 (E.D. Tex. Aug. 3, 2017) (imposing sanctions and awarding the movant's attorneys' fees where "the creation and publication" of extrajudicial websites "appear[] to have been deliberately timed to interfere with or improperly influence potential jurors and witnesses", evidencing bad faith and an "abuse of the judicial process that warrants the imposition of sanctions under the Court's inherent powers"). Including this Reply, Defendants estimate that their attorney's fees associated with the Motion to be approximately $15,000 (and are prepared to support those fees with an appropriate declaration and supporting invoices at the Court's request).

## CONCLUSION

17.     Plaintiff's egregious attempt to manipulate the media in her favor only hours before a jury was to be empaneled is unquestionably sanctionable.  This is particularly true where, as here, Plaintiff herself is a former member of the press and self-professed publicity expert.  Plaintiff

---

[5] Defendants acknowledge that the Court has already denied their request to have Plaintiff's claims in this case dismissed, and further acknowledge that the question of whether dismissal of Plaintiff's claims is appropriate has been rendered moot by the jury verdict in Defendants' favor.

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131 – (305) 789-8900

knows firsthand how strongly the media can influence public opinion and the importance of truth and accuracy.   Despite this, Plaintiff pursued a social media campaign rife with deliberate falsehoods in order to drum up media attention for her personal claims.   The more appropriate question, therefore, is what is the proper sanction for Plaintiff's bad faith conduct.   The fact that a jury was empaneled and trial proceeded to verdict does not excuse Plaintiff's bad faith conduct.

WHEREFORE, Defendants respectfully request that the Court grant the Motion, award monetary sanctions—or, at minimum, attorney's fees for Motion that would not have had to be expended if Plaintiff had not engaged in bad faith—and grant such other and further relief as the Court deems just and proper.

Respectfully submitted this 23rd day of May, 2022.

> BAKER & MCKENZIE LLP
> *Attorneys for CBS Television Stations, Inc.*
> Sabadell Financial Center
> 1111 Brickell Avenue, Suite 1700
> Miami, Florida 33131
> Telephone: (305) 789-8900
> Facsimile:  (305) 789-8953
>
> By:  /s/ *William V. Roppolo*
> William V. Roppolo, Esq.
> Florida Bar No. 182850
> william.roppolo@bakermckenzie.com
>
> Benjamin C. Davis, Esq.
> Florida Bar No. 110734
> benjamin.davis@bakermckenzie.com
>
> – *and* –
>
> Blair J. Robinson (*Pro Hac Vice*)
> Paul C. Evans (*Pro Hac Vice*)
> Krissy Katzenstein (*Pro Hac Vice*)
> BAKER & MCKENZIE LLP
> 452 Fifth Avenue
> New York, NY 10018
> Telephone: (212) 626-4100

Facsimile: (212) 310-1632
blair.robinson@bakermckenzie.com
paul.evans@bakermckenzie.com
krissy.katzenstein@bakermckenzie.com

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131 – (305) 789-8900

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on May 23, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ *William V. Roppolo*
        William V. Roppolo, Esq.

## SERVICE LIST

**SILVA HARAPETI,**

**v.**

**CBS TELEVISION STATIONS, INC.,** *et al.*,

**CASE NO: 20-CV-20961-KMW**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Peter M. Hoogerwoerd, Esq.
REMER & GEORGES-PIERRE, PLLC
44 West Flagler Street
Suite 2200
Miami, Florida 33130
pmh@rgpattorneys.com
Phone: (305) 416-5000
Facsimile: (305) 416-5005
*Attorneys for Plaintiff Silva Harapeti*

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131 – (305) 789-8900